

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **I N F O R M A T I O N** |
| | ) | |
| Plaintiff, | ) | **1 : 15 CR 216** |
| | ) | |
| v. | ) | CASE NO. _____ |
| | ) | Title 18, Sections 1347 and 2, |
| QUEEN WARD, | ) | United States Code |
| | ) | **JUDGE BOYKO** |
| Defendant. | ) | |

The United States Attorney charges:

### GENERAL ALLEGATIONS

1. QUEEN WARD ("Defendant WARD") was an owner and Office Manager at Heritage Home Healthcare Agency of Cleveland Heights, Inc. ("Heritage Home Health").

2. Heritage Home Health was located at 2490 Lee Boulevard, #314, Cleveland Heights, Ohio 44118, in the Northern District of Ohio.

3. Sharon R. Ward ("Sharon Ward") was Defendant Ward's daughter. Sharon Ward was an owner of Heritage Home Health and its Director of Nursing.

The Medicaid Program

4. Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, et seq., established the Grants to States for Medical Assistance Programs ("Medicaid") which was designed to provide medical services, equipment, and supplies to certain individuals and families with low income.

Medicaid was a federal and state funded health insurance program administered by the various states. The United States Department of Health and Human Services ("HHS") funds approximately 60 percent of Ohio's Medicaid program. The state of Ohio initially administered its Medicaid program through the Ohio Department of Jobs and Family Services ("ODJFS"), and then through the Ohio Department of Medicaid ("ODM").

5. Medicaid was a health care benefit program as defined under Title 18, Section 24(b), United States Code.

6. In order to be reimbursed by Medicaid for certain home health services, a provider Home Health Agency ("HHA") rendering a service to Medicaid recipients was first required to enter into a provider agreement with ODJFS/ODM in which the provider agreed to comply with all applicable state and federal statutes, regulations and guidelines.

7. Home health services provided by an HHA under the Ohio Medicaid program included home health nursing, home health aide, and skilled therapies such as physical and occupational therapy. Home health services must be performed within the nurse's or home health aide's scope of practice, must be provided and documented in accordance with the consumer's plan of care, must be provided in a face-to-face encounter, must be medically necessary, and must be provided in accordance with Federal and State laws rules and regulations.

The PASSPORT Program

8. The Pre-Admission Screening System Providing Options and Resources Today program ("PASSPORT") offered home health care and community-based services to individuals as an alternative to institutionalization or nursing home care. PASSPORT was funded with state and federal funds under the Medicaid Waiver program. PASSPORT contracted with Medicaid home care agencies to provide services to eligible individuals.

9. The Ohio Department of Aging ("ODA") administered the PASSPORT program. Reimbursement for PASSPORT services required the provider to have a Medicaid number that had a waiver designation code. ODM assigned the PASSPORT waiver designation code to an existing provider Medicaid number, or assigned a new number to the provider to be used exclusively for reimbursement of waiver services.

10. In order to provide home care services to eligible Medicaid recipients under the PASSPORT program, the provider home health agency agreed to abide by all applicable federal and state regulations, including, but not limited to, ensuring all employees had the proper training and certification, passed criminal background checks, and were not federally excluded from participation in health care programs.

Criminal Background Checks

11. Home health care providers were required to conduct background checks on all employees who provided direct care under the PASSPORT program pursuant to Sections 173.27, 173.38 and 173.381 of the Ohio Revised Code, and Section 173-9 of the Ohio Administrative Code.

12. The Ohio Attorney General's Bureau of Criminal Identification ("BCI") processed background checks required pursuant to law. BCI completed background checks by comparing the fingerprints of prospective employees against a database of individuals with known criminal convictions to determine if the prospective employee has a criminal record, and if so, whether it included a conviction for a crime that rendered the prospective employee disqualified from providing direct patient care ("Disqualified Employee").

13. If the BCI background check disclosed that the prospective employee had no criminal record, it sent the employer a "No Record" letter indicating that the prospective employee was not a Disqualified Employee.

14. If the BCI background check disclosed that the prospective employee did have a criminal record, it sent the employer a copy of the criminal history so that the employer could determine whether the potential employee was a Disqualified Employee.

Defendant Ward Created Fraudulent Background Checks for Disqualified Heritage Employees

15. Defendant WARD was responsible for performing background checks on prospective employees at Heritage Home Health.

16. BCI mailed to Defendant WARD all of Heritage Home Health's criminal histories, "No Record" letters, and invoices for background checks.

17. Defendant Ward created fraudulent background checks for Heritage Home Health's prospective employees that had criminal histories and were Disqualified Employees.

18. Defendant WARD cut and pasted the name and social security number of Disqualified Employees onto "No Record" letters for individuals whose background checks showed they had no criminal history.

19. The Disqualified Employees for whom Defendant WARD created fraudulent background checks actually had criminal convictions including, but not limited to: felonious assault, aggravated assault, assault, grand theft, theft, attempted theft, petty theft, taking the identity of another, and forgery.

20. Defendant WARD created fraudulent background checks to make it appear that Disqualified Employees were actually permitted to provide direct care to Medicaid recipients,

4

and to evade PASSPORT regulations intended to protect the health, safety, and property of patients.

21. From on or about January 1, 2008, through on or about December 31, 2014, Heritage Home Health billed ODA/ODM for services provided by Disqualified Employees.

22. ODA/ODM would have denied payment to Heritage Home Health for any such bills had they known the services were provided by Disqualified Employees and that Defendant WARD had created fraudulent background checks.

Federal Health Care Exclusion

23. Pursuant to authority under Title 42, United States Code, Section 1320A-7, the United States Department of Health and Human Services Office of Inspector General ("HHS-OIG") excluded the following individuals from participation in any Federal health care program: "(a)(1) Any individual or entity that has been convicted, under Federal or State law, of a criminal offense relating to the delivery of an item or service under title XVIII or under any State health care program."

24. Pursuant to 42 U.S.C. § 1395y, "no payment [could] be made ... with respect to any item or service ... furnished by an individual or entity during the period when he [was] excluded pursuant to [42 U.S.C. § 1320a-7]." 42 U.S.C. § 1395y(e)(1)(A).

Sharon R. Ward's Exclusion

25. On or about April 16, 2004, Sharon R. Ward entered a plea of No Contest to one count of Medicaid Fraud, a misdemeanor of the first degree, in Franklin County Municipal Court, for Sharon R. Ward's continuing course of conduct in making or causing to be made, false or misleading statements or representations to obtain reimbursement from Medicaid.

26. As a result of her criminal conviction for Medicaid Fraud, Sharon R. Ward was excluded from participation in any capacity in Medicare, Medicaid, and all federal health care programs for a minimum period of five years, which became effective on or about April 20, 2005.

27. Excluded providers were prohibited from submitting or causing claims to be submitted to Federal health care programs for items or services which she provided, and also from being employed to provide items or services which were billed to a federal health care program.

28. Sharon R. Ward continued to own Heritage Home Health at all times relevant to this Information while she was excluded. Sharon R. Ward also saw patients as a nurse, conducted supervisory nursing visits, and billed Medicaid for her and her employees' services at Heritage Home Health while she was excluded.

29. On or about February 4, 2014, agents from the Ohio Medicaid Fraud Control Unit informed Defendant WARD that Sharon R. Ward was an excluded provider, that she had never been reinstated, and that she could not work in any capacity at Heritage Home Health until she was reinstated.

30. From on or about February 6, 2014, through on or about December 31, 2014, Defendant WARD continued to bill Medicaid and pay Sharon R. Ward for services she performed at Heritage Home Health despite Defendant WARD's knowledge that Sharon R. Ward was excluded.

## COUNT 1
## Health Care Fraud
## (18 U.S.C. § 1347 and § 2)

The United States Attorney further charges:

31. The United States Attorney realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

32. From on or about January 1, 2008, through on or about December 31, 2014, the exact dates unknown, in the Northern District of Ohio, the defendant, Queen Ward, knowingly and willfully executed and attempted to execute the above-described scheme and artifice to defraud Medicaid and PASSPORT, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises described herein, money and property owned by and under the custody and control of, a health care benefit program as defined in Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services.

All in violation of Title 18, United States Code, Sections 1347 and 2.

STEVEN M. DETTELBACH
United States Attorney

By: *Ann Rowland*
ANN ROWLAND
Deputy Chief, Criminal Division